397 A.2d 1325.

BARBARA ANN STANKO *vs.* HARTFORD ACCIDENT & INDEMNITY COMPANY.

FEBRUARY 26, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

KELLEHER, J. On December 6, 1971, Barbara Ann Stanko (Barbara) was a passenger in her motor vehicle, which was then being operated by Robert Brassil (Robert). Barbara's vehicle was involved in a collision in Massachusetts with another motor vehicle. The second vehicle, which was being driven by Dennis Silvia, was apparently owned by him and his wife, Laura. As a result of the collision Barbara suffered serious injuries, including fractures of the left cheek and elbow, permanent facial scars, loss of sight in the left eye, and a continued numbness along the entire left side of her head.

The Silvia vehicle was covered by a liability insurance policy the limits of which satisfied the minimum amounts required by Massachusetts compulsory insurance law, to wit, $5,000 per person and $10,000 per accident.

About a year after the collision Robert and Barbara married each other, and on February 9, 1973, in consideration of $7,500 they executed a joint release which ran in favor of the Silvias. Five thousand dollars of the settlement was allocated to Barbara's claim. Subsequently, on June 21, 1974, she instituted this suit.

At the time of the mishap Barbara lived at home in Warren, Rhode Island, with her family. She owned a 1970 Ford which was insured by Hartford Accident and Indemnity Company (Hartford). Barbara's father, Stanley, owned a 1968 Chevrolet which was covered under a family automobile policy issued by Hartford. Barbara, because she was a relative living at home, was also an insured under her father's policy. Each policy afforded $10,000/$20,000 uninsured-motorist coverage.

In her complaint Barbara asserts that since the Silvia vehicle was covered by a policy the limits of which were less than the $10,000/$20,000 minimum coverage required by G.L. 1956 (1968) Reenactment) §31-31-7, Rhode Island's financial responsibility law, the Silvia vehicle, being "underinsured" as far as the financial responsibility law was concerned, was "uninsured"[1] for the purpose of the coverage afforded by Hartford. Hartford's response to Barbara's complaint consisted of an answer disputing her "uninsured" classification of the Silvia vehicle and a motion for summary judgment supported by an affidavit of the claims manager of its Johnston office.

The motion was based on a stipulation found in each policy which excluded uninsured-motorist coverage if the insured "shall, without written consent of the company, make any settlement with any person or organization who may be legally liable therefor." In his affidavit the claims

---

[1]A motor vehicle which, at the time of the collision, is not covered by a liability policy within the minimum limits mandated by G.L. 1956 (1968 Reenactment) §31-31-7 has been considered an uninsured automobile. *Allstate Insurance Co.* v. *Fusco,* 101 R.I. 350, 357, 223 A.2d 447, 451 (1966).

manager stated that at no time did anyone associated with Hartford give Barbara permission to execute the February 1973 release. No counteraffidavits were submitted by Barbara.

A Superior Court justice granted Hartford's motion, and Barbara is before us claiming that the grant was erroneous because (1) the exclusion relied upon by Hartford is invalid since it violates the statute which requires insurers to offer Rhode Island motorists uninsured-motorist coverage in minimum amounts of $10,000 per person and $20,000 per accident, and (2) there is a factual issue which was left unresolved.

Earlier, we had the opportunity to comment briefly on the validity of the consent exclusion. In *Pickering* v. *American Employers Insurance Co.*, 109 R.I. 143, 155, 282 A.2d 584, 591 (1971), we described the exclusion as an enforceable safeguard which protects the insurer's right of subrogation. Such a proviso, we observed, carries with it an implied promise by the insurer that it will not arbitrarily or unreasonably withhold its consent.

Admittedly, the compatibility of the consent exclusion with a legislative mandate calling for the furnishing of uninsured-motorist coverage has been extensively litigated and discussed. *See* Widiss, *Uninsured Motorist Coverage* §§5.7, .9, .10 (1969); 25 A.L.R.3d 1275 et seq. (1969). Although the exclusion has been described as being an unwarranted and unauthorized curtailment of statutorily mandated insurance coverage, those words usually have been spoken in instances in which there has been a multivehicle collision and the insured has settled a claim against someone other than the owner or operator of an uninsured vehicle.[2]

---

[2]The consent exclusion has been upheld by the Massachusetts Supreme Judicial Court in an instance in which the insured had settled a bodily injury claim with an insured third party. *Aetna Cas. & Sur. Co.* v. *Poirier,* 371 Mass. 257, 356 N.E.2d 452 (1976). The court's holding rests upon certain statutory language found in Mass Gen. Laws Ann. ch. 175, §113L(4), which provides that an insurer making

Courts which have taken such a position have made clear that the exclusionary clause retains its viability when applied to a settlement made with the owner or operator or other person who might be legally responsible for the damages caused by the uninsured vehicle. *Government Employees Insurance Co.* v. *Shara*, 137 N.J. Super. 142, 148-49, 348 A.2d 212, 215 (1975); *Harthcock* v. *State Farm Mutual Autumobile Insurance Co.*, 248 So. 2d 456, 459-60 (Miss. 1971); *Hawaiian Insurance & Guaranty Co.* v. *Mean*, 14 Wash. App. 43, 50-51, 538 P.2d 865, 869-70 (1975).

Clearly, when the exclusion has been declared invalid, its invalidity is restricted to settlements made with tort-feasors other than the uninsured motorist. Here, Barbara, by settling her claim against the Silvias, has completely obliterated any hope Hartford might have had of seeking reimbursement from the owner and the operator of an uninsured vehicle. Thus, we see no reason at this time to retreat one whit from what we said in *Pickering*.

Barbara's contentions regarding the factual aspects of her claim against Hartford need little discussion. Although in *Pickering* we excused an insured's failure to comply strictly with the literal requirements of the notice provisions of her policy in the absence of a showing of prejudice by the insurer, we made it clear in *Donahue* v. *Hartford Fire Insurance Co.*, 110 R.I. 603, 605, 295 A.2d 693, 694 (1972), that we never intended that our comments in *Pickering* concerning prejudice could serve as an excuse for an insured who, after purchasing a policy, files it away and forgets it.

---

payment to its insured under uninsured-motorists coverage "shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made * * *." The insured's argument that the receipt of the settlement proceeds could not be considered as conclusive proof of the third party's liability fell on deaf ears. The Supreme Judicial Court pointed out that the settlement demonstrates that at some time the insured had claimed that the third party was legally liable for his injuries. Thus, the court ruled that the settlement conclusively established the existence of legal responsibility for the purposes of §113L(4). *Id.* at 356 N.E.2d at 454-55.

Here, Barbara made no effort whatsoever to comply with the notice or consent provisions of the policy. On the record as presented to the Superior Court, the first time Hartford was ever aware that a settlement had been made was when it received notice of the pendency of this litigation. Barbara's policy indicates that Hartford's contractual obligation is terminated in the event that an unsanctioned settlement is made with "any person or organization who may be legally liable therefor." Barbara claims that there is nothing in the record to indicate that Dennis Silvia's negligence was the cause of the collision. She also states that she has an unresolved potential negligence claim against her husband, Robert. However, an examination of Barbara's complaint against Hartford shows that she claims the injuries she received were the result of a collision between the car in which she was a passenger and an underinsured automobile and she goes on to say that the loss she has incurred is "a result of being struck by an underinsured automobile." Barbara's allegation about the cause of her injuries is enough to place the Silvias within reach of the exclusion's "any person * * * who may be legally liable" language.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Keenan, Rice, Dolan, Reardon & Kiernan, John W. Kershaw,* for plaintiff.

*Carroll, Kelly & Murphy, C. Russell Bengtson,* for defendant.