W. Kenneth O'DONNELL, Edward
E.V. D'Agostino and D'Agostino
& O'Donnell, Plaintiffs,

v.

TWIN CITY FIRE INSURANCE
COMPANY, Defendant.

C.A.No. 97–348L.

United States District Court,
D. Rhode Island.

March 18, 1999.

Harry W. Asquith, Asquith, Mahoney & Robinson, Providence, RI, for plaintiffs.

Thomas C. Angelone, Elizabeth A. Kelleher, Hodosh, Spinella & Angelone, Providence, RI, for defendants.

## DECISION AND ORDER

LAGUEUX, Chief Judge.

The parties in this case dispute the coverage of a legal malpractice insurance poli-cy issued by the Twin City Fire Insurance Company ("defendant") to W. Kenneth O'Donnell, Edward E.V. D'Agostino and D'Agostino & O'Donnell ("plaintiffs").

Plaintiffs have been sued by their former client Dawn Panciera nee Cornwell ("Panciera") in Rhode Island Superior Court, and they believe that defendant should defend and indemnify them in that action. Panciera has sued plaintiffs because her previous lawsuit arising from a 1983 car accident (the "Accident Suit") was dismissed for lack of service of process and lack of prosecution.[1] Defendant argues that Panciera's malpractice suit (the "Malpractice Suit") is based on acts and omissions that occurred before April 10, 1992, a time span explicitly excluded from the insurance contract.[2] This matter is presently before the Court on cross-motions for summary judgment.

The key to this case is to determine when plaintiffs made the alleged errors that led to dismissal of the Accident Suit and the subsequent filing of the Malpractice Suit. Plaintiffs argue that the errors occurred on June 10, 1994 when Superior Court Judge Melanie Wilk Famiglietti dismissed the Accident Suit. Defendant argues that the errors occurred years earlier when plaintiffs failed in their responsibilities as Panciera's attorneys. By reference to Judge Famiglietti's bench decisions, it becomes obvious that plaintiffs have been accused of making two sets of errors and omissions. One set—the alleged failure to serve process—occurred before April 10, 1992. The second set—the alleged failure to prosecute the Accident Suit—stretched from 1986 to 1994 and includes a period covered by the insurance policy. Plaintiff's claim for indemnification is premature and cannot be decided until the Malpractice Suit is resolved. However, the Complaint in that suit alleges acts of malpractice that extend into the insurance pol-

---

1. The Accident Suit, entitled *Cornwell v. Picard*, was dismissed by the Rhode Island Superior Court on June 10, 1994.

2. The Malpractice Suit, entitled *Panciera v. D'Agostino*, is currently pending in the Rhode Island Superior Court sitting in Washington County.

icy period. Therefore, defendant owes plaintiffs the duty to defend the Malpractice Suit.

Defendant's motion for summary judgment is denied, and plaintiffs' motion for summary judgment is granted only as to the duty to defend.

## I. *Facts*

Dawn Panciera nee Cornwell was a passenger in a car driven by Jeffrey R. Picard on June 18, 1983 when the young man lost control of the car and struck a tree. Panciera was injured, and she hired D'Agostino & O'Donnell to sue Jeffrey Picard and his father Roger H. Picard, who owned the vehicle (the "Picards").

Attorney Kenneth O'Donnell filed a complaint on behalf of Panciera on June 17, 1986 in Superior Court in Washington County. O'Donnell says that he had a constable serve process on the Picards, but he never filed that return of service. In fact, he never filed anything more than the complaint. The case file aged in the Superior Court clerk's office, but like wine, a lawsuit spoils without the proper attention. Seven years later, Panciera hired new attorneys who moved for a default against the Picards. The Picards objected, claiming that they were never served with process, and Judge Famiglietti held hearings on March 8, 1994 and June 10, 1994. At the second hearing, Judge Famiglietti dismissed the Accident Suit based on two independent grounds: (1) that service of process had not been made on the Picards and (2) that the Accident Suit had not been prosecuted by plaintiffs for a period exceeding five years. (*See* Transcript of June 10, 1994 Hearing at 9–14, attached as Exhibit A to D.'s Twin City Fire Ins. Co. Mem. in Supp. of (1) Its Obj. to P.'s Mot. For Summ.J.; and (2) Its Cross–Mot. For Summ.J. (hereinafter June 10 Transcript).)

The four counts of the Malpractice Suit allege legal malpractice and breach of contract against Edward E.V. D'Agostino and Kenneth O'Donnell. The Complaint alleges that they failed to prosecute the Acci-

dent Suit, but it does not specify the acts and omissions that led plaintiffs to allegedly fail in their duty to Panciera. (*See* Complaint in Malpractice Suit, attached as Exhibit A to P.s' Supplemental Mem. Of Law in Supp. of Mot. For Summ.J. (hereinafter Malpractice Complaint).)

The insurance policy that controls this litigation covers claims made during the policy period. The policy is subject to a "Prior Acts Limitations Endorsement:"

> It is hereby understood and agreed that Claims Made Provision I, "Policy Territory and Prior Acts" is deleted and replaced by the following:
>
> I. Policy Territory and Prior Acts
>
> This policy applies to acts, errors or omissions anywhere in the world:
>
> a) Provided that those acts, errors or omissions occur on or subsequent to 4–10–92,

(Endorsement, attached as Exhibit B to D.'s Twin City Fire Ins. Co. Mem. in Supp. of (1) Its Obj. to P.'s Mot. For Summ.J.; and (2) Its Cross–Mot. For Summ.J.) Both parties signed the Endorsement and the original contract.

## II. *Legal Standard for Motion for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Therefore, the critical inquiry is whether a genuine issue of material fact exists. "Material facts are those that might 'affect the outcome of the suit under the governing law.'" *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505,

2509–10, 91 L.Ed.2d 202 (1986)). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could resolve it in favor of either party. *See Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997).

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." *Gannon v. Narragansett Elec. Co.,* 777 F.Supp. 167, 169 (D.R.I.1991).

■ The coincidence that both parties move simultaneously for summary judgment does not relax the standards under Rule 56. *See Blackie v. Maine,* 75 F.3d 716, 721 (1st Cir.1996). Barring special circumstances, the District Court must consider each motion separately, drawing inferences against each movant in turn. *See id.*

### III. *An Insurer's Duties*

■ An insurer under this type of policy has two duties under Rhode Island law—the duty to defend and the duty to indemnify. The duty to defend is broader than the duty to indemnify. *See Mellow v. Medical Malpractice Joint Underwriting Ass'n,* 567 A.2d 367, 368 (R.I.1989); *Employers' Fire Ins. Co. v. Beals,* 103 R.I. 623, 240 A.2d 397, 403 (R.I.1968). *See also Nortek, Inc. v. Liberty Mut. Ins. Co.,* 858 F.Supp. 1231, 1236 (D.R.I.1994). If defendant could be required to indemnify under any factual allegation in the Malpractice Suit Complaint, then defendant has a duty to defend the suit. *See Peerless Ins. Co. v.*

*Viegas,* 667 A.2d 785, 787 (R.I.1995); *Allstate Ins. Co. v. Russo,* 641 A.2d 1304, 1306 (R.I.1994). Furthermore, any doubts as to the adequacy of the pleadings to encompass an occurrence within the scope of the policy must be resolved in the insured's favor. *See Russo,* 641 A.2d at 1306. The insurer cannot rely on facts not asserted in the complaint to avoid its duty to defend. *See Flori v. Allstate Ins. Co.,* 120 R.I. 511, 388 A.2d 25, 26 (R.I.1978). If any of the acts or omissions alleged in the Malpractice Suit Complaint could possibly be covered under the insurance policy, then defendant has an unequivocal duty to defend plaintiffs against all the claims asserted. *See Nortek,* 858 F.Supp. at 1236 (applying to Rhode Island the First Circuit's reasoning in *Titan Holdings Syndicate, Inc. v. City of Keene,* 898 F.2d 265, 269 (1st Cir. 1990)).

■ The significance of this rule for this case is that defendant may have a duty to defend plaintiffs even though it may eventually not have a duty to indemnify plaintiffs for damages payable to Panciera. As Judge Ernest C. Torres explained in *Nortek,* the test is whether the Malpractice Suit Complaint raises the possibility of coverage. *See Nortek,* 858 F.Supp. at 1237 (citing *Beals,* 240 A.2d at 402). In *Nortek,* Judge Torres compared the complaint in the suit against Nortek with the insurance policy issued by Liberty Mutual to Nortek. *See id.* at 1236–38. He pointed out that two of that complaint's allegations would trigger the duty to defend because they could result in coverage under the insurance contract. *See id.* at 1237–38.

This Court will utilize the same procedure in this case. It will examine the scope of the insurance contract and then examine all the allegations in the Malpractice Suit Complaint.

### IV. *The Insurance Contract*

The insurance contract provides coverage for the malpractice of plaintiffs in their

legal practice. It places three requirements on plaintiffs:

- that the act, error or omission must have occurred on or after April 10, 1992

- that plaintiffs had first knowledge of the claim or became aware of the act, error or omission that could reasonably be expected to give rise to the claim during the policy period.

- that plaintiffs report the claim to the insurance company during the policy period.

For purposes of these motions for summary judgment, it is undisputed that the second and third conditions have been met by plaintiffs. The parties do not dispute that plaintiffs reasonably believed that they had effectively represented Panciera until Judge Famiglietti's first hearing on March 8, 1994 and that plaintiffs reported the possible claim in a timely fashion.

The key to this case is the timing of the acts or omissions covered by the malpractice insurance contract. Those acts and omissions are the acts and omissions committed *by plaintiffs.*

■ Plaintiffs argue that this Court should look to June 10, 1994, when Judge Famiglietti dismissed the Accident Suit, as the key date. That cannot be so. The precedent cited by plaintiffs was a case that turned on an insured's failure to notify an insurance company during the policy period. *See DiLuglio v. New England Ins., Co.,* 959 F.2d 355, 357 (1st Cir.1992). The judge's dismissal might be key to timing plaintiffs' knowledge of the claim, but that issue is uncontested here.

This Court construes insurance contracts. *See Mallane v. Holyoke Mut. Ins. Co.,* 658 A.2d 18, 20 (R.I.1995). It relies on the literal language of the policy absent a finding that the policy is ambiguous. *See id.* This policy is not ambiguous. Its clear language refers to the acts or omissions of the insured, not the acts or omissions of people not party to the contract.

Therefore, this Court looks to plaintiffs' acts or omissions and when they occurred.

## V. *The Allegations in the Malpractice Complaint*

The Malpractice Suit Complaint alleges four counts. Count I and Count II are legal malpractice claims against D'Agostino and O'Donnell respectively. Count III and Count IV are breach of contract claims against the pair respectively. All four claims are based on an allegation that plaintiffs "failed to prosecute" the Accident Suit. (*See* Malpractice Complaint at ¶¶ 13, 17, 24, 31.)

That allegation that plaintiffs "failed to prosecute" the Accident Suit could be supported by facts that prove either of two alleged sets of omissions because Judge Famiglietti based her June 10, 1994 dismissal order on two legal grounds—first, the omissions that led to the failure to serve process on the Picards and, second, the omissions that led to the failure to prosecute.

■ "Failure to prosecute" in Judge Famiglietta's decision refers to a specific legal doctrine drawn from R.I. Gen.Laws § 9–8–3(a). Panciera's counsel uses the same words in the Malpractice Complaint, but Panciera could succeed in her suit by proving plaintiffs' failure either to serve process or to take action for a long enough time to warrant dismissal under R.I. Gen. Laws § 9–8–3(a). In determining an insurance company's duty to defend, this Court is not bound by the exact words of the Malpractice Complaint—it can make reasonable assumptions. *See Peerless Ins. Co.,* 667 A.2d at 789 ("A plaintiff, by describing his or her cat to be a dog, cannot simply by that descriptive designation cause the cat to bark.")

Therefore, this Court examines each possible set of facts to determine if defendant could be held liable to indemnify plaintiffs. The key to this test is whether the omissions at issue occurred before or after April 10, 1992.

## A. Failure To Serve Process

There is a factual dispute as to whether a constable served process on the Picards. Judge Famiglietti found that service had not been made. (*See* June 10 Transcript at 12.) However, res judicata principles do not bar plaintiffs from litigating that issue in the Malpractice Case since they were not parties to the 1994 hearings. *See Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994) (applying collateral estoppel or issue preclusion only where factual issue was decided in previous litigation between the parties). It is clear that plaintiffs did not have their interests protected before Judge Famiglietti. The Picards were the opposing party, and Panciera's new attorney had to know that if the Accident Suit was dismissed, then Panciera would have a cause of action against plaintiffs. That put both parties at the 1994 hearings in conflict with plaintiffs' interests.

■ However, that factual dispute is not material to this case. Whether or not plaintiffs had process served, the errors or omissions relating to that service would have occurred before April 10, 1992. The Accident Suit was filed on June 17, 1986. The final day it could have been filed was May 18, 1987 because Panciera, who was born May 18, 1966, was a minor when the accident occurred. *See* R.I. Gen.Laws § 9–1–14(b) (three-year statute of limitations); R.I. Gen.Laws § 9–1–19 (tolled until age of 18). At the time of the Accident Suit, service could have been effectuated within a reasonable time, and seven months was unreasonable under Rhode Island case law. *See Curtis v. Diversified Chemicals and Propellants Co.*, 440 A.2d 747, 749 (R.I.1982).

Therefore, the latest date that plaintiffs could have served process on the Picards was on or about January 18, 1988. Wheth-er process was served or not, defendant would not be liable for plaintiffs' acts or omissions because those acts or omissions would have occurred before April 10, 1992.

## B. Failure To Prosecute

■ Judge Famiglietti exercised her discretion when she dismissed the Accident Suit for lack of prosecution. Under Rhode Island statutes, a judge has the discretion to dismiss a suit if there has been no action taken in it for more than five years. *See* R.I. Gen.Laws § 9–8–3(a). There was no activity in the Accident Suit from 1986 to 1994 when Panciera's new attorneys filed a motion. It appears that plaintiffs were Panciera's attorneys until some point in 1993.[3] Therefore, plaintiffs allegedly committed seven years of omissions as they let the Accident Suit languish, and at least some of those omissions—those from April 10, 1992 until Panciera hired new attorneys—was covered by defendant's insurance policy.

Judge Famiglietti did not distinguish what omissions drove her to exercise her discretion and dismiss the Accident Suit. She treated the entire period of inactivity as a whole, so this Court will do the same. Defendant is liable for plaintiffs' acts and omissions after June 10, 1992, and it is possible that those acts and omissions led to the dismissal of the Accident Suit.

Therefore, defendant owes plaintiffs a duty to defend against the entire Malpractice Suit.

## VI. The Outcome of the Motions

To summarize, the Malpractice Suit could be based on two sets of alleged acts and omissions because Judge Famiglietti dismissed the Accident Suit based on two grounds. Plaintiffs allegedly failed to

---

**3.** Neither party has specified the date that Panciera severed her relationship with plaintiffs and hired a new law firm, Packer and O'Keefe. Defendant says that it occurred in 1993. (*See* D.'s, Twin City Fire Ins. Co., Pretrial Mem. at 2.) Plaintiffs say that it occurred in 1992 or 1993. (*See* P.'s Statement of Undisputed Facts Pursuant to Local Rule 12.1 at ¶ 8.)

serve process and allegedly failed to prosecute the case for more than five years.

As to the service of process, this Court does not decide whether or not plaintiffs served process on the Picards. Plaintiffs are not subject to issue preclusion, but the factual dispute is not material. Any service of process would have had to be completed on or about January 18, 1988. Therefore, defendant cannot be liable for any acts or omissions relating to service of process.

As to the failure to prosecute, Judge Famiglietti based her dismissal on a seven-year span of inaction, and defendant insured plaintiff's omissions for at least a portion of that span. It .is possible that the allegations in the Malpractice Suit Complaint would make plaintiff liable for some omissions occurring after April 10, 1992. That, in turn, makes defendant responsible to defend plaintiffs in the Malpractice Suit.

This Court is unable to decide whether there is a duty to indemnify in this case. That can only be resolved after the Malpractice Suit has been decided on the merits. If, for example, the jury in the Malpractice Suit finds plaintiffs liable only for failure to make service, then defendant would have no duty to indemnify plaintiffs for payment of the resulting judgment. However, if the jury finds that plaintiffs' inactions after April 10, 1992 contributed to the dismissal of the accident case, then defendant might well be liable, at least partially, for indemnification.

### CONCLUSION

For the preceding reasons, defendant's motion for summary judgment is denied. Plaintiffs' motion for summary judgment is granted as to the duty to defend and denied as to the duty to indemnify. Judgment shall enter for plaintiffs to the effect that defendant has a duty to defend the pending Malpractice Suit. The claim in the Complaint regarding the duty to indemnify is dismissed without prejudice.

It is so Ordered.