**ADVANCE WATCH COMPANY, LIMITED, Plaintiff–Appellee, Cross–Appellant,**

v.

**KEMPER NATIONAL INSURANCE COMPANY, Defendant,**

**The Travelers Indemnity Company of America, Defendant–Appellant, Cross–Appellee.**

Nos. 95–1367, 95–1387.

United States Court of Appeals, Sixth Circuit.

Argued June 3, 1996.

Decided Nov. 5, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied Dec. 30, 1996.

Mark A. Cantor (argued and briefed), Frank A. Angileri, Maria Franek, Brooks & Kushman, Southfield, MI, for plaintiff–appellee.

Michael D. Prough, William C. Morison–Knox (argued and briefed), Sonnenschein, Nath & Rosenthal, San Francisco, CA, for defendant–appellant.

Before: MILBURN and SUHRHEINRICH, Circuit Judges; JORDAN, District Judge.*

JORDAN, District Judge.

In this diversity action, the defendant The Travelers Indemnity Company of America ("Travelers") appeals from the district court's order granting the motion for summary judgment of the plaintiff Advance Watch Company, Limited ("Advance"). In granting the plaintiff's motion, the district court ruled that Travelers, as Advance's liability insurance carrier, owed a duty to defend Advance in a civil action brought against Advance in the United States District Court for the District of Rhode Island by A.T. Cross Company and A.T.X. International, Inc. (collectively, "Cross").

Advance cross-appeals from the district court's denial of its motion for the recovery of attorneys' fees and costs against Travelers in this civil action.

## I.

### A.

On May 17, 1994, Advance commenced this civil action against Travelers and another defendant, Kemper National Insurance Company ("Kemper").[1] Advance alleged that these insurance carriers were bound to indemnify Advance against any liability owed to Cross, and to defend Advance in the Cross

action. Advance also claimed attorneys' fees and costs in the present action.

The parties litigated this civil action on cross-motions for summary judgment. The district court denied Travelers' motion for summary judgment, ruled that Travelers had an obligation to defend Advance in the Cross action, and entered summary judgment for Advance on February 28, 1995.[2] The district court denied Advance's motion for attorneys' fees incurred in the present action, but granted Advance's motion for costs incurred in this action. This timely appeal and cross-appeal followed.

### B.

This civil action was properly before the district court on the basis of the parties' diversity of citizenship. 28 U.S.C. § 1332. The diverse citizenship of the parties is established in the record. The jurisdictional amount requirement of § 1332(a) was met by the facts that when Advance commenced this civil action, the extent of its liability in the Cross action had not been determined, and that Advance alleged in the present action that it anticipated defense costs in the Cross action of "well over $50,000.00." Advance also prayed for damages in its complaint filed in this action, and for punitive or exemplary damages for Travelers' alleged bad faith. *See Jones v. Knox Exploration Corporation*, 2 F.3d 181, 182–83 (6th Cir.1993) ("if a good-faith claim of sufficient amount is made in the complaint, subsequent events that reduce the amount below the statutory requirement do not require dismissal"); *compare Stonewall Ins. Co. v. Lopez*, 544 F.2d 198 (5th Cir.1976) (the jurisdictional amount require-

---

* The Honorable Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. Kemper was Advance's liability insurance carrier when Advance commenced this civil action; the policy period during which Travelers provided liability insurance coverage was August 25, 1992, to August 25, 1993.

  The district court granted Kemper's motion for summary judgment, and dismissed the plaintiff's claim against this defendant in this civil action. Advance did not appeal from the district court's judgment in favor of Kemper, and so no issue concerning the Kemper liability insurance policy is before this court. In any event, in its com-

plaint filed in this civil action, Advance alleged that the pertinent provisions in the two policies are identical, and the district court so found.

2. Because Advance was not liable for damages in its settlement with Cross, the issue of indemnification became moot.

  After the district court awarded summary judgment in favor of Advance against Travelers, these parties filed a stipulation concerning the amount to be recovered by Advance for its defense in the Cross action. Advance and Travelers therefore stipulated that the award of summary judgment in favor of Advance was a "full and final resolution of all issues raised in this matter."

ment was met in a declaratory judgment action brought by a liability insurance carrier even though the applicable policy limit did not exceed $10,000.00, the jurisdictional amount then stated in the statute; it was proper to include the pecuniary value of the cost of defending the putative insured in determining the amount in controversy).

This court has jurisdiction of this appeal and cross-appeal by virtue of 28 U.S.C. § 1291.

### C.

Under familiar rules concerning contracts of liability insurance, the district court was required to consider the allegations pleaded in the Cross action in the light of the coverage provisions and exclusions in the policy issued by Travelers to Advance. These aspects of the record are undisputed, and reveal as follows.

On July 27, 1994, Cross sued Advance in the district court in Rhode Island under the federal trademark statute, the Lanham Act, as amended, 15 U.S.C. §§ 1051, *et seq.* The Cross action arose out of Advance's license agreement with Pierre Cardin, which granted Advance the right to use the "Pierre Cardin" trademark and stylized "PC" logo on writing instruments advertised and sold by Advance in the United States. The basis for the complaint was that the Pierre Cardin writing instruments advertised and sold by Advance had "a trade dress, product design and configuration which are reproductions, counterfeits, copies and colorable imitations," Jt.App. at 65, of Cross writing instruments, particularly in their imitation of Cross' frusto-conical top trademarks. Cross alleged that Advance had committed statutory and common-law trade dress and trademark infringement, unfair competition, and dilution. The counts of Cross' complaint stated causes of action for (1) trade dress infringement in violation of the Lanham Act, including infringement of Cross' frusto-conical top trademarks, constituting false designations of origin, false descriptions, and false representations; (2) trademark infringement in violation of the Lanham Act, by importing, advertising, offering for sale, and selling writing instruments which were reproductions, counterfeits, copies, and colorable imitations of Cross' registered frusto-conical top trademarks; (3) trade dress infringement and trademark infringement in violation of the common law of Rhode Island, leading to unjust enrichment of Advance through "misappropriation" of Cross' trade dress, trademarks, and associated goodwill; (4) unfair competition in violation of the common law of Rhode Island, arising out of the same conduct as the trade dress and trademark infringement; and (5) dilution of the distinctiveness of Cross' trademarks and injury to Cross' business reputation in violation of Rhode Island statutory law, also arising out of the same conduct. Cross prayed for injunctive relief, an accounting, damages, treble damages, punitive damages, and attorneys' fees and costs under 15 U.S.C. § 1117. Cross alleged that Advance had published a writing instrument catalog depicting the writing instruments alleged to be imitations of Cross writing instruments, and requested specifically that Advance be enjoined from further advertising of the imitation Cross writing instruments, and that all advertisements of those instruments be destroyed.

The commercial general liability coverage part of the insurance policy issued by Travelers to Advance, in a portion entitled "PERSONAL AND ADVERTISING INJURY LIABILITY," required Travelers to indemnify Advance against liability determined in, and to defend Advance in, any action for liability involving an "advertising injury" caused by "an offense committed in the course of advertising [Advance's] goods, products or services." "Advertising injury" is defined in the policy to mean injury arising out of one or more of the following:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

Jt.App. at 121–22. The policy does not mention trademark or trade dress infringement, either in defining advertising injury or in stating exclusions from coverage.

Advance properly tendered the Cross action to Travelers for defense and indemnity. Travelers duly notified Advance that coverage was denied, and declined to provide a defense in the Cross action. While the present action was pending in the district court, Advance settled the Cross action by agreeing to alter the design of its Pierre Cardin writing instruments and to halt sales of the writing instruments alleged to imitate Cross writing instruments.

## II.

### A.

■ The defendant Travelers argues that the district court erred in granting summary judgment to Advance on the issue of Travelers' duty to defend Advance in the Cross action. We review grants of summary judgment *de novo. Brooks v. American Broadcasting Companies, Inc.,* 999 F.2d 167, 174 (6th Cir.), *cert. denied,* 510 U.S. 1015, 114 S.Ct. 609, 126 L.Ed.2d 574 (1993). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988). In the present case, the facts are not disputed, and we are presented solely with a question of law concerning the correct construction of the Travelers insurance policy.

As required by the Rules of Decision Act, 28 U.S.C. § 1652, the district court in the present action applied Michigan law, including that concerning choice of law, *see Klaxon Co. v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), and determined that Michigan law governs

construction of the Travelers policy in this case, Travelers having issued the policy to Advance in the State of Michigan. *See Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.,* 878 F.Supp. 1034, 1037 (E.D.Mich.1995), and authorities cited therein. As the district court noted, the parties agree that Michigan law governs the substantive issues in this case.

The district court summarized Michigan law concerning a liability insurer's duty to defend its insured as follows:

> In liability policies, the obligation of the insurer depends upon the allegations of the underlying complaint. *Detroit Edison Company v. Michigan Mutual Ins. Co.,* 102 Mich.App. 136, 141, 301 N.W.2d 832 (1980). The insurer only has a duty to defend the insured if the charges against the insured in the underlying action arguably fall within the language of the policy. *Allstate Ins. Co. v. Freeman,* 432 Mich. 656, 662, 443 N.W.2d 734 (1989). However, the terminology that was used by the underlying plaintiff in the complaint is not dispositive. Instead, the analysis of the issue must include the actual cause of the injury. *Id.* at 662–63, 443 N.W.2d 734. Any doubt as to the insurer's liability must be resolved in favor of the insured. *Detroit Edison,* 102 Mich.App. at 142, 301 N.W.2d 832. Moreover, where only some of the claims against the insured party are covered, the insurer must defend the whole claim until it becomes apparent that no recovery is possible under the covered theory. *Titan Holdings Syndicate v. Keene,* 898 F.2d 265, 269 (1st Cir.1990) (applying New Hampshire law and citing the majority rule).

*Advance Watch Co.,* 878 F.Supp. at 1037–38.

■ More generally, in interpreting an insurance policy, Michigan law requires courts to look at the policy as a whole, and to give meaning to all of its terms. *Fresard v. Michigan Millers Mut. Ins. Co.,* 414 Mich. 686, 692–96, 327 N.W.2d 286, 288–89 (1982). Terms are to be interpreted by considering their commonly understood meanings. *Upjohn Company v. New Hampshire Ins. Co.,* 438 Mich. 197, 207, 476 N.W.2d 392, 397

(1991). Courts should refrain from applying a "technical or strained construction" to words in insurance policies. *Hosking v. State Farm Mut. Auto. Ins. Co.,* 198 Mich. App. 632, 634, 499 N.W.2d 436, 437, *leave to appeal denied,* 444 Mich. 892, 511 N.W.2d 686 (1993) (citation omitted). Whenever terms are ambiguous, courts are required to construe the language in the light most favorable to the insured. *Powers v. Detroit Auto. Inter–Insurance Exchange,* 427 Mich. 602, 621, 398 N.W.2d 411, 419 (1986). However, ambiguities should not be forced. *Fresard, supra,* 414 Mich. at 694, 327 N.W.2d at 289.

This court recently reiterated some of the rules which Michigan courts follow in construing insurance contracts:

> Specifically, Michigan law requires a court to "give effect to all words in an insurance contract if they serve a reasonable purpose." *Allstate Ins. Co. v. Freeman,* 432 Mich. 656, 443 N.W.2d 734, 749 (1989). "Meaning should be given to all terms. Ambiguities should not be forced. Conflicts among clauses should be harmonized." *Fresard v. Michigan Millers Mut. Ins. Co.,* 414 Mich. 686, 327 N.W.2d 286, 289 (1982). Michigan has long adhered to the common sense position that an interpretation of a contract, which is what an insurance policy is, should give effect to all of its provisions.

*Harrow Products, Inc. v. Liberty Mut. Ins. Co.,* 64 F.3d 1015, 1024–25 (6th Cir.1995).

■ It is also a rule of Michigan law that "exclusionary clauses in insurance policies are to be strictly construed against the insurer and that ambiguous contract provisions also must be construed against the insurer and in favor of the insured." *Harrow Products, supra,* 64 F.3d at 1019 (citation omitted). No exclusionary clause applies in this case; the question is whether what was pleaded in the Cross action arguably stated any claim for liability for an advertising injury, as defined in the policy issued by Travelers, committed in the course of advertising Advance's goods, products or services.

**3.** The parties agree that there is no functional distinction between trademarks and trade dress for the purposes of this litigation. · *See generally*

**B.**

■ In awarding summary judgment in favor of Advance, the district court concluded that "the term 'misappropriation of style of doing business,' though not ambiguous, is broad enough to embrace claims that the insured copied a design explicitly protected by trademark." *Advance Watch Co.,* 878 F.Supp. at 1041–42 (footnote omitted). The district court further concluded that because Cross' claims arguably arose from Advance's catalogs advertising the Pierre Cardin writing instruments alleged to imitate Cross writing instruments, Cross' injury arose out of Advance's advertising activities. *Id.* at 1042.

It is apparent that at least one of Cross' theories of recovery must be categorized as "misappropriation of advertising ideas or style of doing business" for this court to sustain the summary judgment in favor of Advance, for none of the other three categories of "advertising injury" in the policy issued by Travelers—defamation or trade libel, invasion of privacy, or infringement of copyright, title or slogan—applies· in the least to the Cross action. Travelers argues that the Cross action was about alleged trademark and trade dress infringement[3], and that misappropriation as the term is used in the policy refers to a common-law tort which is distinct from such infringement, and which protects intangible interests not protected by the law of trademarks. Advance counters that the language in the policy must be construed according to the ordinary meanings of the words used, and that in its ordinary meaning, "misappropriation" refers broadly to a category of wrongful conduct which includes trademark and trade dress infringement.

In concluding that the policy language "misappropriation of style of doing business" is not ambiguous, the district court referred to, *inter alia, Atlantic Mut. Ins. Co. v. Badger Medical Supply Co.,* 191 Wis.2d 229, 528 N.W.2d 486 (Wis.Ct.App.1995). In *Badger*

*Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992).

*Medical Supply Company,* the definition of covered advertising injury was the same as in the policy in issue here; the underlying claim alleged intentional inducement of a sales representative to leave his employment with a competing medical supply company, and to breach a restrictive covenant not to compete with this former employer and not to divulge confidential information obtained through his employment. In upholding a declaratory judgment in favor of the liability insurer, the Wisconsin Court of Appeals found no difficulty in understanding the meaning of "advertising injury":

> Although Badger argues that the policy language is ambiguous, it also contends that the terms "misappropriation," "advertising idea," and "style of doing business" are defined either by case law or common usage. Apparently Badger finds ambiguity in the term "advertising injury." However, since "advertising injury" is defined as any one of four listed offenses, there is no ambiguity if the meaning of the applicable offense is clear. The offense Badger relies on may be committed in either one of two ways: by misappropriating advertising ideas or by misappropriating a style of doing business. We conclude that the meaning of each is defined either by case law or common usage and there is no ambiguity as to either.

*Id.* at 237–38, 528 N.W.2d at 489.

The Wisconsin court held that the elements of the common-law tort of misappropriation have been defined in case law, and that "advertising idea" should be understood in its ordinary meaning of "an idea for calling public attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage." *Id.* at 238–39, 528 N.W.2d at 489–90. The court found a definition of "style of doing business" established in case law as "a company's comprehensive manner of operating its business," which may include distinctive sales techniques. *Id.* at 239–40, 528 N.W.2d at 490 (quoting *St. Paul Fire and Marine Ins. Co. v. Advanced Interventional Systems, Inc.,* 824 F.Supp. 583, 585 (E.D.Va.1993), *aff'd,* 21 F.3d 424 (4th Cir.1994)). The Wisconsin Court of Appeals held that the competing

medical supply company's claim for interference with its contract with its former sales representative could not be read as a claim for misappropriation of an advertising idea or of a style of doing business, and that the liability insurer therefore had no duty to defend against the competing medical supply company's claim.

As can be seen, the *Badger Medical Supply Company* court did not have before it the issue whether trade dress infringement constitutes misappropriation of advertising ideas or of a style of doing business within the meaning of the advertising injury policy provision. The liability insurer in *Badger Medical Supply Company* argued that misappropriation of a style of doing business is the same as infringement of trade dress, apparently to lay a foundation for arguing that because the underlying claim was for interference with contract, not infringement, there was no coverage and no duty to defend. The Wisconsin Court of Appeals rejected this argument, noting that a style of doing business might become eligible for protection as trade dress by possessing or acquiring distinctiveness, "and only if there is a likelihood of confusion." *Badger Medical Supply Company, supra,* 191 Wis.2d at 240, 528 N.W.2d at 490 (citation omitted). The court noted the difference between the tort of misappropriation and trade dress infringement, that the former does not require a showing that the public is or might be confused by the misappropriation. *Id.* at 240, 528 N.W.2d at 490–91. In a footnote which hints at the intellectual difficulties presented by the parties' arguments in the present case, the court of appeals noted that

> [t]he relationship between the tort of misappropriation (whether of style of doing business or of advertising ideas) and claims based on sources of intellectual property law, raises numerous issues, including preemption and the extent to which courts permit misappropriation claims where requirements for more specific claims are not met. However, we need not resolve these issues in order to interpret the policy language.

*Id.* at 241 n. 4, 528 N.W.2d at 491 n. 4 (citations omitted).

The pertinence of the decision in *Badger Medical Supply Company* to the present case lies in its analysis refuting the contention that "advertising injury," "misappropriation," "advertising ideas," or "style of doing business" is an ambiguous term. This court agrees with the Wisconsin court's analysis and conclusion in this regard. Each of these terms has either an established dictionary meaning or a meaning derived from case law. As the Wisconsin Court of Appeals noted, misappropriation has existed as a definite tort (at least in the context of unfair competition) since the decision in *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), a pre-*Erie* [4] decision which this court followed in *A & M Records, Inc. v. M.V.C. Distributing Corporation*, 574 F.2d 312 (6th Cir.1978) (applying Michigan law), a case concerning sound recordings not covered by the 1976 Copyright Act.

There is no doubt that the issue of whether there still exist quasi-property interests which are eligible for protection by a tort-law doctrine of misappropriation, even though such interests are ineligible for protection under copyright, patent, trademark, or trade secret law, or under the law concerning appropriation of the commercial value of another's identity, is a difficult one. *See* RESTATEMENT THIRD, UNFAIR COMPETITION § 38 and comments and reporter's notes (1995). It is not, however, an issue presented by this case. All that is relevant here is that there has been, and perhaps continues to be, a body of law which gives meaning to the term "misappropriation of advertising ideas or style of doing business," and which renders the term unambiguous, as referring to a category of actionable conduct separate from trademark and trade dress infringement. This court finds such an unambiguous meaning in this term, reading it against the background of a now somewhat extensive body of law. *See, e.g., Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir.1994) (citations omitted) ("Trade dress is the 'total image of a product, the overall impression created, not the individual features.' But the mere method and style of

doing business is not protectable [under the Lanham Act].... Trade dress does not protect one from a competitor's imitation of one's marketing concept."); *United States Golf Association v. St. Andrews Systems, Data–Max, Inc.*, 749 F.2d 1028, 1035 (3d Cir.1984) (footnote omitted) ("The doctrine [of misappropriation] has been applied to a variety of situations in which the courts have sensed that one party was dealing 'unfairly' with another, but which were not covered by the three established statutory systems protecting intellectual property: copyright, patent, and trademark/deception as to origin."); *Dior v. Milton*, 9 Misc.2d 425, 155 N.Y.S.2d 443 (Sup.Ct.), *aff'd without opinion*, 2 A.D.2d 878, 156 N.Y.S.2d 996 (1956). *Cf. Sykes Laboratory, Inc. v. Kalvin*, 610 F.Supp. 849, 852–56 (C.D.Cal.1985) (an unfair competition claim arising out of the defendant's alleged adoption of the plaintiff's trademark in advertising comparing the defendant's cheaper, generic product with the plaintiff's trademarked product required a showing of likelihood of confusion or deception; trademark infringement or the alleged taking of the goodwill enveloped in the trademark was not actionable under a theory of misappropriation).

Taking such authorities as these into account, this court concludes, contrary to the district court's conclusion, that "misappropriation of advertising ideas or style of doing business" does not refer to a category or grouping of actionable conduct which includes trademark or trade dress infringement. "Misappropriation of advertising ideas or style of doing business" does not necessarily refer only to the common-law tort of misappropriation recognized by the Supreme Court in *International News Service v. Associated Press, supra*, and elaborated in later case law, but, we conclude, it does refer to the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law.

Other factors besides this historical use of the term "misappropriation" support this conclusion. As Judge Posner, writing for the Court of Appeals for the Seventh Circuit in

---

**4.** *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*Curtis–Universal, Inc. v. Sheboygan Emergency Medical Servs., Inc.*, 43 F.3d 1119, 1123 (7th Cir.1994) (applying Wisconsin law), noted, the torts listed under the heading "advertising injury" in the commercial general liability insurance policy are "concerned mainly with harmful speech in various forms."[5]  As the Cross action shows, a claim for trademark or trade dress infringement need not depend on speech at all, especially when the trademark or trade dress alleged to have been infringed is constituted solely by the design or appearance of the trademarked product.  The district court's broad reading of "misappropriation of advertising ideas or style of doing business" to include a reference to trademark or trade dress infringement would therefore expand the sense of "advertising injury" to include nonverbal conduct—a result difficult to rationalize in light of the ordinary meaning of "advertising."

Another factor which supports reversal of the district court's conclusion is the absence from the policy definition of "advertising injury" of any express reference to trademark infringement.  Legal recognition of interests in trademarks and remedies for trademark infringement has long existed.

> The right to adopt and use a symbol or a device to distinguish the goods or property made or sold by the person whose mark it is, to the exclusion of use by all other persons, has been long recognized by the common law and the chancery courts of England and of this country, and by the statutes of some of the States.  It is a property right for the violation of which damages may be recovered in an action at law, and the continued violation of it will be enjoined by a court of equity, with compensation for past infringement.  This exclusive right was not created by the act of Congress, and does not now depend upon it for its enforcement.  The whole system of trade-mark property and the

civil remedies for its protection existed long anterior to that act, and have remained in full force since its passage.

*Trade–Mark Cases*, 100 U.S. 82, 92, 25 L.Ed. 550 (1879).  Recognition of trademark and trade dress infringement as a distinct category of actionable conduct is so common that the only reasonable assumption is that if Travelers had intended to provide coverage for such liability, the insurer would have referred to it by name in the policy, as it did in the case of "infringement of copyright, title or slogan."  *Cf. St. Paul Fire & Marine Ins.*, 824 F.Supp. at 586 ("[I]t is nonsense to suppose that if the parties had intended the insurance policy in question to cover patent infringement claims, the policy would explicitly cover infringement of 'copyright, title or slogan,' but then include patent infringement, *sub silentio*, in a different provision, by reference to 'unauthorized taking of ... [the] style of doing business.' ").  *Accord, Gencor Industries, Inc. v. Wausau Underwriters Ins. Co.*, 857 F.Supp. 1560, 1564–65 (M.D.Fla. 1994).

The reading which we give "misappropriation of advertising ideas or of style of doing business" is not a technical or strained one, and does not violate the injunction of Michigan law to construe terms in insurance policies according to their commonly understood meanings.  A layperson might at first glance read the term so broadly as to include in its scope trademark and trade dress infringement and a good deal of other conduct of the general nature of taking something which belongs to another.  Such a reading, however, would expand the meaning of the term to the extent of not having any distinctive meaning at all, and would lead to the absurd result of providing coverage for liability for trademark infringement without any mention of the word "trademark".  It would necessarily lead to the conclusion in the present

---

5.  The decision in *Curtis–Universal* does not provide controlling authority in this case for several reasons, including that the version of the commercial general liability insurance policy in issue in that case defined "advertising injury" in terms of "libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title or slogan," and that the main issue in *Curtis–Universal* was whether

the policy reference to "unfair competition" required the insurer to provide a defense against a claim for damages for tortious interference with contractual relations and/or for civil antitrust violations.  Nevertheless, Judge Posner's analysis for the court in *Curtis–Universal* provides persuasive authority for reading the policy definition of "advertising injury" in an integrated manner.

action that the design and appearance of an object offered for sale can reasonably be called an advertising idea or a style of doing business.

Again, we find Judge Posner's analysis in *Curtis–Universal* instructive by analogy. In that case, the insured argued that under a former edition of the comprehensive general liability insurance policy, which defined "advertising injury" in part as "unfair competition," the latter term should be given a broad meaning. The court of appeals rejected this argument, and held instead that the reasonable expectation of the insured and the insurer was that the policy provided coverage for liability for unfair competition as defined by its normal legal meaning at the time of issuance of the policy. The court noted that a broad, layperson's reading of "unfair competition" would lead to a finding of insurance coverage for liability for antitrust violations, in spite of the fact that such violations are the product of deliberate conduct. *Id.*, 43 F.3d at 1123.

In the present action, we conclude that the reasonable expectation of these parties as to coverage rests on the fact that "misappropriation of advertising ideas or style of doing business" refers to a grouping of actionable conduct fairly well delimited by case law, and does not refer to another, distinct grouping of actionable conduct which has come to be commonly referred to in case law and in legal treatises as "trademark and trade dress infringement." We reject the reasoning of the cases on which Advance relies.[6]

In *J.A. Brundage Plumbing & Roto–Rooter, Inc. v. Massachusetts Bay Ins. Co.*, 818 F.Supp. 553 (W.D.N.Y.1993), *vacated in light of settlement*, 153 F.R.D. 36 (W.D.N.Y.1994), the district court, with little analysis, simply held that unlawful use of another's trademark is necessarily a misappropriation of an advertising idea or style of doing business. The court did not refer to the common-law tort of misappropriation.

The statement in *St. Paul Fire & Marine Ins.*, 824 F.Supp. at 585, that "style of doing business" refers to trade dress, is *dictum* in light of the fact that the issue in that case

concerned coverage for liability for patent infringement. *P.J. Noyes Company v. American Motorists Ins. Co.*, 855 F.Supp. 492 (D.N.H.1994), follows *J.A. Brundage Plumbing & Roto–Rooter, Inc., supra;* as in the latter case, the district court in *P.J. Noyes Company* did not discuss the common-law tort of misappropriation.

In *Nortek, Inc. v. Liberty Mut. Ins. Co.*, 858 F.Supp. 1231 (D.R.I.1994), the underlying action against the insured included claims that the insured circulated advertising materials in a catalog that contained photographs of the claimant's products, and that the insured packaged its products in boxes which bore the claimant's unique model designation numbering information. The underlying action in *Nortek, Inc.* was not, therefore, one for alleged trademark infringement alone. *See id.* at 1236–38. Furthermore, in *Nortek, Inc.*, the insurer had conceded before the litigation between it and the insured commenced that the policy issued to the insured provided coverage with respect to at least some of the claimant's claims, noting that imitation of a competitor's distinctive packaging might be misappropriation of an advertising idea. *See id.* at 1233–34 and n. 2, and at 1237–38 and n. 23.

The precise holding in *American Economy Ins. Co. v. Reboans Inc.*, 900 F.Supp. 1246, 34 U.S.P.Q.2d 1692 (N.D.Cal.1994), *motion to reconsider denied*, June 22, 1995, on which Advance relies here, was that "infringement of title" as used in the comprehensive general liability insurance policy encompasses "use of another's name or designation in an advertisement, whether or not the name or designation was a 'trademark.' " *Id.*, 900 F.Supp. at 1252, 34 U.S.P.Q.2d at 1697. In construing "misappropriation of style of doing business" to include trade dress infringement, the *Reboans* court relied on *J.A. Brundage Plumbing & Roto–Rooter, Inc., supra, Advanced Interventional Systems, Inc., supra*, and *P.J. Noyes Company, supra*.

Furthermore, in denying a motion for reconsideration, the *Reboans* court indicated that its December 1994 ruling, reported at

---

6. At oral argument before this court, counsel for Advance conceded that there has not been pub-

lished any ruling of a federal appellate court upholding the decisions on which Advance relies.

900 F.Supp. 1246, 34 U.S.P.Q.2d 1692, which overturned its earlier (May 1994) ruling in favor of the insurer, reported at 852 F.Supp. 875, rested on a ground not considered in the May 1994 ruling: "that trademark infringement could be an 'infringement of title or slogan.'" 900 F.Supp. at 1256 (footnote omitted). In the accompanying footnote, the court cast doubt on whether it continued· to rely on any conclusion that trademark infringement constitutes misappropriation of an advertising idea: "The May [1994] order implicitly rejected the first part of [the] holding [in *J.A. Brundage Plumbing & Roto–Rooter, Inc., supra*]: Misappropriation doctrine seems ill-suited to trademark cases. *The December [1994] order did not revise the analysis with regard to misappropriation.*" 900 F.Supp. at 1256 n. 1 (citation omitted) (emphasis added).

*Poof Toy Products, Inc. v. United States Fidelity and Guar. Co.*, 891 F.Supp. 1228 (E.D.Mich.1995), relies on much the same authority as did the district court in the present action. *Poof Toy Products'* ruling on the misappropriation/trademark infringement issue was unnecessary, given that the complaint in the underlying action in that case also stated causes of action for infringement of copyright, title or slogan.

In *Union Ins. Co. v. The Knife Co.*, 897 F.Supp. 1213 (W.D.Ark.1995), the insurer did not dispute that a trademark is an advertising idea or style ·of doing business. Moreover, the district court concluded, *id.* at 1217, that an action for trademark infringement can be described as one for infringement of title or slogan ·within the meaning of the comprehensive general liability insurance policy. The court in *Dogloo, Inc. v. Northern Ins. Co. of New York*, 907 F.Supp. 1383 (C.D.Cal.1995), relied on *J.A. Brundage Plumbing & Roto–Rooter, Inc., supra, Advanced Interventional Systems, Inc., supra, P.J. Noyes Company, supra, Reboans Inc., supra*, and the district court's decision in the present action.

The district court below based its decision in part on the fact that an earlier edition of

the insurance policy in issue stated expressly an exclusion from advertising injury coverage for infringement of trademark, service mark or trade name.[7] "By dropping the trademark exclusion in the 1986 CGL policy, it appears that the insurance companies intentionally broadened their coverage to include such claims." *Advance Watch Co., Ltd., supra*, 878 F.Supp. at 1042 n. 14. However, as the District Court for the Northern District of California in the first *Reboans Inc.* opinion, 852 F.Supp. at 882, explained, the earlier edition of· the policy provided coverage for liability for unfair competition; once unfair competition was eliminated from the. list of covered advertising injuries, the exclusion for trademark infringement became surplusage.

■  More importantly, the "proper analysis of whether an insurer has a duty to defend and indemnify an insured ... requires a determination of whether coverage exists under the policy, and if coverage exists, then there must follow a determination of whether the exclusionary clause applies." *Allstate Insurance Company v. Freeman*, 432 Mich. 656, 661, 443 N.W.2d 734, 737 (1989). It follows that the absence of an exclusion cannot create coverage; the words used in the policy must themselves express an intention to provide coverage for liability for the kind of occurrence or injury alleged by the claimant against the insured.

■  In the .Cross action, Cross' allegations, read fairly, all stated one .or more causes of action for trademark and/or trade dress infringement. The gravamen of Cross' complaint is that Advance's Pierre Cardin writing instruments so closely resembled Cross' writing instruments as to infringe Cross' design for its writing instruments, which is protected under the law of trademarks. While Cross used the word "misappropriation" in its complaint, it did so in a context' which indicated clearly that the substance of Cross' claims was not misappropriation in the legal sense, but trademark or trade dress infringement; it is common prac-

---

7.  This court applied this exclusion to affirm a denial of a duty to defend in *Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.*, 25 F.3d 332 (6th Cir.1994), a case arising under Michigan law.

tice, but not legally precise, to refer to "misappropriation" of a trademark or of trade dress. The court concludes as a matter of law that the Travelers policy, in its advertising injury provisions, did not provide to Advance any coverage for liability of the kind asserted in the Cross action, and that Travelers was therefore entitled to a summary judgment in the present action that it owed no duty to defend Advance against Cross' claims.

### C.

■ There is another, independent reason why Travelers is entitled to summary judgment in its favor in this action. The policy in issue provides coverage for liability for advertising injury "caused by an offense committed in the course of advertising [Advance's] goods, products or services." The policy therefore requires some nexus between the ground of asserted liability and the insured's advertising activities before there is coverage or a duty to defend.

In *Bank of the West v. Superior Court of Contra Costa County,* 2 Cal.4th 1254, 10 Cal. Rptr.2d 538, 551–54, 833 P.2d 545, 558–61 (1992), the California Supreme Court, in construing similar language [8], held that this policy provision requires that the injury claimed to have been suffered by the claimant have been caused by the insured's advertising activities. Otherwise, advertising injury coverage would apply whenever an advertised product or service is alleged to have caused harm, rendering the coverage applicable with respect to most claims against an insured business.

In *A. Meyers & Sons Corp. v. Zurich Am. Ins. Group,* 74 N.Y.2d 298, 304, 545 N.E.2d 1206, 1209, 546 N.Y.S.2d 818, 821 (1989), the New York Court of Appeals held that the circulation of a price list was not advertising activity for this purpose when the underlying complaint did not allege injury on the basis of the price list, but alleged instead unfair methods of competition and unfair acts on the basis of the manufacture, importation and sale of products alleged to infringe the claimant's patents. The court's construction of the advertising injury policy language was that "to trigger [the insurer's] duty to defend, the claimed injury must both arise out of an offense occurring in the course of the insured's 'advertising activities' and constitute one of the enumerated offenses." *Id.* at 303, 545 N.E.2d at 1208, 546 N.Y.S.2d at 820.

In *St. Paul Fire and Marine Insurance Company v. Advanced Interventional Systems, Inc., supra,* in addition to holding that a patent infringement claim could not give rise to coverage or a duty to defend under the advertising injury provisions of a general liability insurance policy, the District Court for the Eastern District of Virginia, applying California law, followed *Bank of the West, supra,* and held that mere advertisement of a product alleged to infringe the claimant's patent could not satisfy the policy requirement that injury be caused by an offense that resulted from advertising of the insured's products or work.

It is true that a trademark, unlike a patent, can be infringed in an advertisement, but we find a broader requirement properly stated in these cases which Advance cannot satisfy in this case. The gravamen of Cross' complaint was that the Advance Pierre Cardin writing instruments too closely resembled Cross' writing instruments, thereby infringing Cross' marks, which consist of the shape and appearance of the writing instruments themselves. It is true that Cross complained that Advance was, *inter alia,* advertising the infringing writing instruments, that Cross exhibited a copy of Advance's catalog to the complaint filed in the Cross action, and that Cross prayed, *inter alia,* that Advance be enjoined from advertising the infringing writing instruments, and that Advance be required to deliver for destruction all infringing advertisements and catalogs. However, it was not Advance's advertising in itself which provoked Cross' claim; it was the fact that in each advertisement

---

**8.** The pertinent policy language in *Bank of the West* and in *A. Meyers & Sons Corp.,* 74 N.Y.2d at 301, 545 N.E.2d at 1207, 546 N.Y.S.2d at 819, provided coverage for liability for conduct defined as advertising injury if such conduct "occur[red] in the course of the ... insured's advertising activities." We do not perceive a real distinction between this language and the similar language in the policy issued by Travelers to Advance.

which depicted a Pierre Cardin writing instrument, there was, according to Cross, a writing instrument deceptively similar in shape and appearance to Cross' writing instruments.

Contrary to the district court's conclusion, we conclude that even if Advance could be said to have misappropriated Cross' advertising ideas or style of doing business, it cannot reasonably be said to have done so in the course of advertising its writing instruments, when it is the shape and appearance of the writing instruments themselves which Cross claimed to have caused injury. Advance argues that the appearance of its Pierre Cardin writing instruments was in itself advertising, but this argument proves too much, for it would invoke advertising injury coverage and the duty to defend whenever a product is merely exhibited or displayed. We conclude as a matter of law that the "committed in the course of advertising" policy language requires more, and that Travelers was entitled to summary judgment on this ground.

### III.

Our decision in this case renders it unnecessary to decide whether the Cross action was in fact one for injunctive relief only, and whether, if such was the case, Travelers owed no duty to defend Advance against Cross' claims in the absence of a genuine claim for damages. *See Jones v. Farm Bureau Mut. Ins. Co.*, 172 Mich.App. 24, 431 N.W.2d 242 (1988).

In light of our decision, the district court did not err in refusing to award attorneys' fees to Advance in the present action, and Advance is therefore not entitled to any relief on its cross-appeal.

For the reasons stated, the decision of the district court is **REVERSED,** and this case is **REMANDED** to the district court for the entry of summary judgment in favor of Travelers.