*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0046p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

CATHERINE ANTON; PETER ANTON,
                *Plaintiffs-Appellants,*

    *v.*

NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PENNSYLVANIA,
                *Defendant-Appellee.*

No. 09-2461

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-11920—Bernard A. Friedman, District Judge.

Argued: January 12, 2011

Decided and Filed: February 11, 2011

Before: SUHRHEINRICH, CLAY, and ROGERS, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Louis G. Corey, THE COREY LAW FIRM, Royal Oak, Michigan, for Appellants. Lauren M. London, DYKEMA GOSSETT PLLC, Ann Arbor, Michigan, for Appellee. **ON BRIEF:** Louis G. Corey, THE COREY LAW FIRM, Royal Oak, Michigan, Mark R. Bendure, BENDURE & THOMAS, Detroit, Michigan, for Appellants. Lauren M. London, Jill M. Wheaton, DYKEMA GOSSETT PLLC, Ann Arbor, Michigan, for Appellee.

_____

## OPINION

_____

SUHRHEINRICH, Circuit Judge. Plaintiffs Catherine and Peter Anton ("Antons") appeal the order of the district court granting summary judgment to Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"). At issue is whether the Antons were covered under a commercial

policy (the "Policy") issued by National Union to General Motors ("GM") as underinsured motorists ("UIM").  We AFFIRM.

## I. Background

## A.  The Policy

The Policy is 538 pages.  It provides nationwide coverage to automobiles owned by GM.  The Policy consists of the Declarations, a forms schedule, various notices and conditions, a Business Auto Coverage Form ("Form"), and 488 pages of endorsements regarding the details of coverage in individual states ("Endorsements").   The Declarations, found on pages one and two of the Policy, designate the named insured, the policy number, the issuing company name, the policy term, and the policy premiums. Page one states that the "Premium for Endorsements" is "Included"  and lists an "Estimated Total Premium."  At the bottom of that page it further states that "[t]hese declarations and the common policy declarations, if applicable, together with the common policy conditions, coverage forms, and forms and endorsements if any issued to form a part thereof complete the above numbered policy."

Page Two, "Item Two," contains the "Schedule of Coverages and Covered Autos." It provides as follows:

> This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos."  "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.

A chart lists the coverages in the Policy.  It contains four columns, reading from left to right: "Coverages," "Covered Autos," "Limit," and "Premium."  One type of coverage under the "Coverages" column is "Underinsured Motorists."  Along this same row (i.e. the "UIM" row), under the next column heading "Covered Autos," is the number "2." In the third column along this row, "Limit," is the language "Separately Stated in Each

UIM Endorsement." Finally, in the fourth or "Premium" column of this row is the word "Included."

The "Business Auto Coverage Form describes the Policy's coverages. Initially, it explains that "Item Two of the Declarations shows the 'autos' that are covered 'autos' for each of your coverages." Symbol number "2," entitled "Owned 'Autos' Only," is described as "[o]nly those 'autos' you own . . . ." Section II of the Form defines "Liability Coverage," as including "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage,'" as well as "all sums an 'insured' legally must pay as a 'covered pollution cost or expense' . . . caused by an 'accident.'" It does not mention UIM coverage. Instead, UIM coverage is described in sixteen separate UIM Endorsements that follow the Form. All of the Endorsements contain similar language of obligation. The endorsement for South Dakota is illustrative. Entitled "South Dakota Uninsured and Underinsured Motorists Coverage," it provides in relevant part that "[w]e will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured' or 'underinsured' motor vehicle.'"[1]

There is no endorsement in the Policy for UIM coverage in Michigan.

There is also an excess policy ("Excess Policy"), which addresses claims covered in the Policy that exceed the Policy's liability limit of $300,000, up to $10 million. The Excess Policy expressly excludes UIM coverage.

---

[1] There are slight variations among the Endorsements. For example, the endorsement for Arizona is titled: "Arizona Underinsured Motorists Coverage" and provides: "We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'underinsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident'".

The endorsement for Iowa, entitled "Iowa Uninsured and Underinsured Motorists Coverage," states in relevant part: "With respect to damages resulting from an 'accident' with a vehicle described in Paragraph b. of the definition of 'uninsured motor vehicle', we will pay under the coverage selected under this endorsement" subject to several conditions. Paragraph b defines an "uninsured motor vehicle" to include a motor vehicle "[t]hat is an underinsured motor vehicle."

**B. Facts**

Peter is an executive at GM and is provided with a GM-owned automobile. National Union insured the company car under the Policy. In May 2006, his wife Catherine was seriously injured when another driver broadsided the company car. Peter was driving and Catherine was in the backseat.

The Antons sued National Union, alleging that the Policy contained UIM coverage in the amount of $300,000, to which they are entitled. National Union filed a motion for summary judgment, contending that the Policy did not contain UIM coverage for the state of Michigan, the site of the accident and the state in which both vehicles were registered. The Antons filed a motion for partial summary judgment, countering that the Policy contains no such geographical limitation. The district court granted National Union's motion and denied the Antons' motion, finding that the Policy did not provide UIM coverage in Michigan. This appeal follows.

**II. Analysis**

This Court reviews the grant of summary judgment de novo. *See Union Planters Bank, N.A. v. Cont'l Cas. Co.*, 478 F.3d 759, 763 (6th Cir. 2007). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Jurisdiction is based on diversity and therefore the substantive law of Michigan applies. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001).

"A court's primary responsibility in construing a Michigan contract is to ascertain and enforce the intent of the parties." *Id.* (citation omitted). "Michigan has long adhered to the common sense position that an interpretation of a contract, which is what an insurance policy is, should give effect to all of its provisions." *Advance Watch Co. v. Kemper Nat'l Ins. Co.*, 99 F.3d 795, 800 (6th Cir. 1996) (citation omitted). This means examining the contract as a whole. *Id.* at 799; *Wonderland*, 274 F.3d at 1092. "When the written agreement refers to a separate document for additional contract terms,

the court must read the writings together." *Wonderland*, 274 F.3d at 1092 (citation omitted). If the parties' intent is clear, the court must enforce that intent as expressed in the writing. *Id.* (citation omitted). If the terms are ambiguous, the court must construe the language in the light most favorable to the insured. *Advance Watch*, 99 F.3d at 800. Parol evidence is barred except "to dispose of a potential ambiguity, to prove the existence of a potential ambiguity, or to indicate the actual intent of the parties where an actual ambiguity exists." *Wonderland*, 274 F.3d at 1095 (citation omitted).

Michigan law does not require UIM coverage; instead, coverage is optional and is controlled by the terms of the relevant policy. *See McDonald v. Farm Bureau Ins. Co.*, 747 N.W.2d 811, 814 (Mich. 2008); Mich. Comp. Laws Ann. § 500.3101, *et seq.* And that is the issue here; namely, whether the language of the policy provides UIM coverage in Michigan.

### A. Policy Language

The parties agree that the Antons' vehicle is a Symbol number 2 "covered auto."

The Antons argue that Catherine is entitled to UIM benefits because there is no geographical limitation in the Policy's UIM coverage, the word "Included" in the Declarations means that such coverage is implicit in every state except Ohio, and that their car was a "Covered Auto" under the Policy.

This is a nonsensical reading of the Policy. The word "Included" in the "Premium" column simply means that the premium for any UIM coverage, as "Separately Stated in Each UIM Endorsement" is included in the "Estimated Total Premium" listed on the first page of the Declarations. This is explained on the first page of the Policy, which states: "Premium for Endorsements: Included." *See Lytle v. Freedom Int'l Carrier, S.A.*, 519 F.2d 129, 135 (6th Cir. 1975) (stating that a court must "construe the entire policy and its endorsement as one document"). *See generally Advance Watch*, 99 F.3d at 800 (court must give effect to all provisions of a contract).

The fact that the Antons were driving a "Covered Auto" under the Policy does not mean that the Policy provided UIM coverage to them. As the district court held,

"covered autos are those which 'may be' covered, not those which have coverage," and "[t]o determine whether covered autos actually have the type of coverage in question, one must consult and interpret the other applicable policy provisions–namely, the 'limit' and 'premium' columns [of the Declarations]–and one must do so in the context of the entire policy." The "Limit" column refers to "each UIM endorsement" for the coverage limits. The "premium" column shows that UIM premiums are "included" in the amount of the total premium. Neither column provides unlimited UIM coverage for every state.[2]

Nonetheless, the Antons contend the plain language does not say that coverage is in existence only for those states with a "separately stated" Endorsement because the "separately stated" language is below the heading "Limit." Thus, according to the Antons, the separately stated Endorsements deal with the *amount* of coverage for those states, *not its very existence*. They acknowledge that "the absence of an endorsement may leave doubt as to the "LIMIT" of UIM coverage," and suggest that it must be $300,000.00, because that is the limit for liability coverage.

The Antons are incorrect. The Endorsements, not the Form, contain not only the limits of UIM coverage for a particular state but the language of obligation for UIM coverage in a particular state, which, as previously noted, is conspicuously absent from the Liability Coverage section in the Business Auto Coverage Form section of the Policy. Restated, the Form section of the Policy simply does not provide for UIM coverage. If not covered by separately stated Endorsement, there is no UIM coverage.

---

[2]In their reply brief the Antons argue that National Union "could have chosen to limit UM and UIM coverage to states where UM coverage is mandatory" by selecting the symbol "6" from the "Description of Covered Autos Designation Symbols." Symbol 6 represents "Owned 'Autos' Subject to a Compulsory Uninsured Motorists Law." Instead, the contracting parties selected symbol "2", which as noted above, provides coverage for autos the insured "own[s]." The Antons contend that the choice of "2" rather than "6" "can *only* mean that the policy does *not* limit UM or UIM coverage to States where it is mandatory, but instead extends coverage to *all* owned vehicles without geographic limitation." Arguments raised for the first time in a reply brief are precluded on appeal. *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) (stating that "an appellant abandons all issues not raised and argued in its initial brief on appeal"). *See also Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1172 (6th Cir. 1996) ("Issues that are not squarely presented to the trial court are considered waived and may not be raised on appeal"), *amended on other grounds*, 97 F.3d 833 (6th Cir. 1996). The argument is illogical in any event. The parties could (and did) agree to provide UM and UIM coverage in some states where such coverage is not mandatory.

Contrary to their assertion, the fact that the Policy contains an express exclusion of UIM coverage for Ohio does not help the Antons. Although UIM coverage is optional in both Michigan and Ohio, a single coverage exclusion for one state does not automatically imply the inclusion of coverage for another state.[3] Nor is comparison to Indiana apt here, because Indiana requires an explicit written rejection of UM and UIM coverage. For that reason, National Union was successfully sued in that state for coverage. *See Lightner v. Nat'l Union Fire Ins. Co.*, No. 3:04-CV-184-RM, 2005 WL 1310674, at *5 (N.D. Ind. May 31, 2005) (holding that "[i]n the absence of a valid written rejection of UM/UIM coverage, Ind. Code § 27-7-5-2(a) dictates that 'uninsured and underinsured motorist coverages must be provided ... in limits at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy'").

The Antons also argue that the absence of a Michigan PIP endorsement [personal injury protection benefits] is telling, because Michigan law requires PIP coverage, and the parties agree that the Policy provides for PIP benefits. *See* Mich. Comp. Laws Ann. § 500.3105 (requiring insurance companies to pay personal protection insurance benefits on behalf of persons injured in a motor vehicle accident regardless of who was at fault). The analogy is flawed. First, National Union contends that "Michigan does not require a PIP endorsement every year." In support, it cites the testimony of Thomas O'Rourke, an employee of American International Group ("AIG"), of which National Union is a subsidiary. O'Rourke testified in his deposition that GM and National Union had completed an endorsement for PIP coverage in 2003 that continued to apply to the Policy, so that a PIP endorsement "wouldn't be a part of this policy because it's not

---

[3]National Union incorrectly asserted in its brief that Ohio requires an explicit UIM coverage exclusion, citing *Abate v. Pioneer Mut. Cas. Ins. Co.*, 258 N.E.2d 429, 431 (Ohio 1970). *Abate* was superseded by statute. *See Wilson v. AIG*, No. CA 2007-11-278, 2008 WL 4456974, at *3 (Ohio App. Oct. 6, 2008). "[E]ffective October 31, 2001, Senate Bill 97 amended R .C. 3937.18 by eliminating the requirement that insurers offer UM/UIM coverage and the requirement of a written offer, selection, or rejection form for UM/UIM coverage." *Id.* "Pursuant to R.C. 3937.18, effective October 2001, '[a]ny policy of insurance delivered or issued for delivery in this state . . . that insures against loss resulting from liability . . . , may, but is not required to, include uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverage.'" *Id.* at *4 (quoting Ohio Rev. Code § 3937.18) (holding that "[b]ecause R.C. 3937.18 no longer requires insurance companies to offer and obtain a written rejection of UM/UIM coverage, the decedent, at the time of the accident, was not entitled to UM/UIM coverage as a matter of law").

required to be put in every year." The Antons counter that "[i]t is a strange notion indeed that if an insured had coverage in one year, it automatically retains the same insurance for future years, despite the lack of any current documentation," and points out that "National Union cites nothing in the applicable 2005 policy which provides PIP coverage, sans current endorsement, just because it was provided two years before."

Although evidence of a separate 2003 policy to support National Union's argument may have been helpful, O'Rourke's testimony is also proof for purposes of National Union's burden under Federal Rule of Civil Procedure 56, and the Antons have not offered anything by way of argument or proof to refute it. The argument is ultimately unavailing, in any event, because this case is not about PIP benefits. Furthermore, it does not logically follow that the absence of an endorsement for a required coverage establishes that the absence of an endorsement for optional coverage means that the parties intended to include that as well.

The Antons also contend that the Endorsements do not create coverage but instead "reduce the policy limits to state-required minimums below the $300,000 range otherwise applicable." They provide no authority for the position and we can find no support in the language of the Policy either.

In sum, the Policy is clear and unambiguous, and the district court's grant of summary judgment to National Union was proper. As recently explained by the Ohio Court of Appeals in evaluating a virtually identical commercial insurance policy:

> Despite appellant's contentions, Culligan's policy with appellees is clear and unambiguous. The policy is a multi-state policy. As such, it contains premium and covered automobile information for UM/UIM coverage because UM/UIM coverage is being provided in certain states. As the trial court explained, the policy states that it "provides only those coverages where a charge is shown in the premium column." The schedule's premium column provides that UM/UIM coverage is "included" in the policy. The schedule's limit column states the coverage is "separately stated in each UM endorsement." The policy does not contain an endorsement for Ohio. As the trial court found, the policy is unambiguous in its denial of UM/UIM coverage for Ohio. Therefore, appellant's argument is without merit.

*Wilson v. AIG*, No. CA2007-11-278, 2008 WL 4456974, at *4 (Ohio App. Oct. 6, 2008). Similarly, the Policy does not contain an UIM endorsement for Michigan. We likewise reject the Antons' arguments on appeal.

## B. Extrinsic Evidence

National Union argues in the alternative that extrinsic evidence removes any doubt that the Policy does not provide UIM coverage in Michigan. We need not consider this evidence, because the contract is unambiguous. *See Wonderland*, 274 F.3d at 1095 ("Michigan's parol evidence rule bars the use of extrinsic evidence to contradict the terms of a written contract intended to be the final and complete expression of the contracting parties' agreement."). Were we to consider this evidence, however, the binders for coverage would reinforce our reading of the Policy.[4] The binders in this case memorialized the agreement between National Union and GM, and provided actual coverage to bridge the gap between the parties' agreement and the issuance of the final Policy. Both of the binders state: "*Please note we do not offer UM/UIM in IN, MI or OH*." The Antons do not point to any language in the final Policy indicating a reversal on that position. They also do not cite evidence of any "express agreement" at the time the binder was issued demonstrating that the Policy's exclusion of UIM insurance in Michigan was "inconsistent with the intent of the binder agreement." *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1278 (6th Cir. 1997) (citation omitted). On top of that, National Union sent a letter to GM, enclosing the forms GM would use to accept or reject UM/UIM coverage under the Policy. The letter also states: "[p]lease be aware that AIG does not offer UM/UIM coverage in Indiana, Michigan and Ohio."

The Antons also think that the contrast between the Policy and the Excess Policy, which expressly excludes UM and UIM coverage, is illuminating. The district court deemed this parol evidence and therefore not relevant. Even if it were relevant, the most natural reading is that National Union did not provide any UM or UIM excess coverage

---

[4]"An insurance binder is a contract of temporary insurance to be effective insurance coverage until a formal policy is drafted and issued." *N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1278 (6th Cir. 1997) (internal quotation marks and citation omitted). It is not a complete contract, but it is evidence of a contractual obligation to be expressed in final written form at a later date. *Id.*

at all, even in those states where UIM basic coverage was provided by way of an Endorsement.

Finally, it should also be noted that the testimony from both GM and National Union officials, which, again, is not relevant given the clear language of the policy, also confirms rather than dispels the notion that National Union did not provide UIM coverage in Michigan.

## III.  Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.